Argued and submitted August 30, decision of the Court of Appeals affirmed in part and reversed in part; judgment of the circuit court reversed, and case remanded to the circuit court for new trial December 9, 1993, reconsideration denied January 18, 1994

Cindi L. NELSON,
*Respondent on Review,*

*v.*

EMERALD PEOPLE'S UTILITY DISTRICT,
a public utility district,
Lionel Topaz, and Jim Theabolt
*Petitioners on Review.*

(CC 16-89-00028; CA A66055; SC S39866)

862 P2d 1293

David Jensen, of Jensen, Fadeley & Elmore, Eugene, argued the cause and filed the petition for petitioners on review.

Martha L. Walters, of Walters Romm & Chanti, P.C., Eugene, argued the cause for respondent on review. With her on the response to the petition was Suzanne Bradley Chanti.

Timothy L. O'Byrne, Charles F. Hinkle, and Ronald W. Messerly, of Stoel Rives Boley Jones & Grey, Portland, filed an *amici curiae* brief on behalf of Consolidated Freightways, Inc.; Pacificorp; First Interstate Bank of Oregon; Tektronix, Inc.; Kaiser Foundation Health Plan of the Northwest; and Harder Mechanical Contractors, Inc.

Before Carson, Chief Justice, and Peterson, Gillette, Van Hoomissen, Unis, and Graber, Justices.

PETERSON, J.

## PETERSON, J.

This case involves two issues. The first is whether, under the facts of this case, an unemployment compensation decision by the Employment Division should be given preclusive effect in a subsequent civil action. The second issue is whether federal law governs the degree of proof and standard of conduct necessary for an award of punitive damages in a 42 USC § 1983 (1988)[1] civil rights action. On the first issue, we conclude that, because of lack of identity of issues, the agency's decision should not have been given preclusive effect. On the second issue, we conclude that federal standards govern an award of punitive damages under section 1983.

The following facts are undisputed. Plaintiff was a clerical employee of defendant Emerald People's Utility District (Emerald) from 1985 through April 19, 1988. In February 1988, plaintiff submitted a bill for a positive pregnancy test to Emerald's benefits department. Emerald's senior staff previously had expressed concern about the costs of Emerald's medical insurance program. Plaintiff's pregnancy and the cost of her medical expenses related to the pregnancy were discussed by defendant Theabolt, Emerald's manager of finance and administration, and defendant Topaz, Emerald's general manager.

Plaintiff's doctor had advised her that, to control her pregnancy-related nausea, she should try to keep something in her stomach at all times by eating five or six small meals each day. Emerald's employees were permitted to eat snacks, but not meals, at their desks. Plaintiff had been warned that eating cereal at her desk was not permitted. She ate an egg sandwich at her desk on the morning of April 19, 1988.

---

[1] 42 USC § 1983 (1988) provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

Later that day, Theabolt told Topaz that plaintiff had been observed eating the egg sandwich at her desk. Theabolt recommended that plaintiff be given a written reprimand. Instead, Topaz decided that plaintiff should be fired. Theabolt prepared a letter of termination and gave it to plaintiff on the day of the incident. The letter stated that plaintiff's conduct was evidence of her "wilful disregard of work rules and warnings."

Plaintiff requested and received a post-termination hearing. Following the hearing, Emerald upheld the termination. Plaintiff then applied for, and was denied, state unemployment benefits. She requested a hearing. Defendants did not attend the hearing. An Employment Division referee set aside the denial and awarded unemployment benefits.

Plaintiff then brought this action. Her first claim was a section 1983 civil rights claim. Her second claim was for breach of contract. Both claims alleged that plaintiff was discharged because of her pregnancy and that she was not given a pre-termination hearing. Emerald's defense was that plaintiff was discharged for wilful disregard of an Emerald work rule. The trial court admitted a copy of the agency decision in evidence and instructed the jury:

> "I instruct you that it has already been determined in a prior proceeding that plaintiff was not discharged for willful misconduct in connection with her work, and therefore you're precluded from finding the plaintiff engaged in willful misconduct."

The trial court also instructed the jury that plaintiff's burden of proving punitive damages on her section 1983 claim was by a preponderance of the evidence and that punitive damages could be awarded if defendant acted with "reckless or callous disregard of or indifference to" plaintiff's rights. The jury returned a verdict for plaintiff on both claims, including punitive damages on the first claim, and judgment was entered in favor of plaintiff. Attorney fees, pre-judgment interest, and costs also were awarded. Defendants appealed.

The Court of Appeals vacated the trial court's award of pre-judgment interest and the punitive damages award against Theabolt and remanded the case for reconsideration of the amount of attorney fees. *Nelson v. Emerald People's*

*Utility Dist.*, 116 Or App 366, 840 P2d 1384 (1992). The Court of Appeals held that the trial court's instruction on issue preclusion was proper, because it did not prohibit the jury from finding that plaintiff violated her employer's work rules, and that, even if the instruction were improper, giving it was harmless error. 116 Or App at 374. The Court of Appeals also held that the instruction on punitive damages was proper and that the trial court did not err in denying defendants' motion to require plaintiff to elect, before judgment, either a contract or a tort remedy. *Id.* at 376.[2]

We first consider whether the trial court erred in instructing the jury that "it has already been determined * * * that plaintiff was not discharged for willful misconduct in connection with her work." This court has abandoned the use of the terms *"res judicata"* and "collateral estoppel" in favor of, respectively, "claim preclusion" and "issue preclusion." *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990); *North Clackamas School Dist. v. White*, 305 Or 48, 50, 750 P2d 485, *modified on other grounds* 305 Or 468, 752 P2d 1210 (1988).

■■    Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding. *North Clackamas School Dist. v. White, supra*, 305 Or at 52; *State Farm Fire & Cas. v. Reuter*, 299 Or 155, 157, 700 P2d 236 (1985). Issue preclusion can be based on the constitution, common law, or a statute. *See State v. Ratliff*, 304 Or 254, 257, 744 P2d 247 (1987) (constitutional basis in a criminal case is the principle of double jeopardy, and civil common-law doctrine is based on judicial economy); ORS 43.130.[3] Because

---

[2] Because plaintiff did not petition for review of the Court of Appeals' decision relating to the issues of pre-judgment interest, the punitive damages award against Theabolt, or attorney fees, we do not address them.

Defendant also raised, in the Court of Appeals and here, an issue concerning election of remedies. We agree with the Court of Appeals that election between tort and contract remedies was not required.

[3] ORS 43.130 provides:

"The effect of a judgment, decree or final order in an action, suit or proceeding before a court or judge of this state or of the United States, having jurisdiction is as follows:

"(1) In case of a judgment, decree or order against a specific thing or in respect to the probate of a will or the administration of the estate of a deceased

this case involves the preclusive effect of an administrative proceeding, it is governed by the common law. *Drews v. EBI Companies, supra*, 310 Or at 142.

■■   If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:

1.   The issue in the two proceedings is identical. *North Clackamas School Dist. v. White, supra*, 305 Or at 53; *State Farm Fire & Cas. v. Reuter, supra*, 299 Or at 158.

2.   The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding. *Heller v. Ebb Auto Co.*, 308 Or 1, 5, 774 P2d 1089 (1989).

3.   The party sought to be precluded has had a full and fair opportunity to be heard on that issue. *Chavez v. Boise Cascade Corporation*, 307 Or 632, 635, 772 P2d 409 (1989); *State v. Ratliff, supra*, 304 Or at 258.

4.   The party sought to be precluded was a party or was in privity with a party to the prior proceeding. *North Clackamas School Dist. v. White, supra*, 305 Or at 53; *State Farm Fire & Cas. v. Reuter, supra*, 299 Or at 159.

5.   The prior proceeding was the type of proceeding to which this court will give preclusive effect. *North Clackamas School Dist. v. White, supra*, 305 Or at 52; *State v. Ratliff, supra*, 304 Or at 258.[4]

person or in respect to the personal, political, or legal condition or relation of a particular person, the judgment, decree or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person.

"(2) In other cases, the judgment, decree or order is, in respect to the matter directly determined, conclusive between the parties, their representatives and their successors in interest by title subsequent to the commencement of the action, suit or proceeding, litigating for the same thing, under the same title and in the same capacity."

[4] Some, but not all, types of administrative proceedings are appropriate to establish issue preclusion. *North Clackamas School Dist. v. White, supra*, 305 Or at 52; *State v. Ratliff, supra*, 304 Or at 258. Whether an administrative decision has a preclusive effect depends on: (1) whether the administrative forum maintains procedures that are "sufficiently formal and comprehensive"; (2) whether the proceedings are "trustworthy"; (3) whether the application of issue preclusion would "facilitate prompt, orderly and fair problem resolution"; and (4) whether the "same quality of proceedings and the opportunity to litigate is present in both

■■    The outcome in this case turns on the first question — was the issue identical in the two proceedings? Plaintiff claimed that she was discharged because she was pregnant. Defendant asserted that plaintiff was discharged because she violated an Emerald rule that employees not eat at their desks. Another Emerald rule provided that any "willful violation of the provisions of [Emerald's] * * * rules" might be "just cause for disciplinary action." The quoted Emerald rule contained no exception for "isolated instances of poor judgment." Plaintiff claims that the Employment Division referee found that she was not discharged for misconduct in connection with her work and that that finding foreclosed defendant from arguing that plaintiff was discharged for wilful violation of Emerald's rule. The trial court agreed and instructed the jury accordingly. We conclude that the referee made no such finding and that the trial court erred in so instructing the jury, because the issues in the two proceedings are not identical.

The issue in the Employment Division hearing was whether plaintiff was entitled to unemployment compensation. Plaintiff was entitled to compensation unless she had "been discharged for misconduct in connection with work," a statutory standard found in ORS 657.176(2)(a). That statute provides that "[a]n individual shall be disqualified from the receipt of benefits * * * if the [referee] finds that the individual * * * [h]as been discharged for misconduct connected with work." An Employment Division rule elaborated on the statutory standard. OAR 471-30-038(3) (1986) provided:[5]

> "Under the provisions of ORS 657.176(2)(a) and (b), misconduct is a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interests, or recurring negligence which demonstrates wrongful intent is misconduct. Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences

proceedings." *State v. Ratliff, supra,* 304 Or at 258; *Chavez v. Boise Cascade Corp., supra,* 307 Or at 635; *North Clackamas School Dist. v. White, supra,* 305 Or at 52.

Because we conclude that the issue in the two proceedings was not identical, we need not decide whether the unemployment compensation proceeding in this case is the type of proceeding that will be given preclusive effect.

[5] OAR 471-30-038(3) since has been amended.

due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct for purposes of denying benefits under ORS 657.176."

OAR 471-30-038(3) was promulgated in 1979 to codify Court of Appeals' holdings as to what would constitute misconduct under ORS 657.176(2)(a). *See Bunnell v. Employment Division*, 304 Or 11, 14-15, 741 P2d 887 (1987) (discussing the history of the rule). The goal of the agency rule was to make it clear that even a wilful violation of the standards of behavior that the employer has the right to expect is not "misconduct" under ORS 657.176(2) if the misconduct is only an isolated wilful violation that amounted to nothing more than "poor judgment." The *Bunnell* opinion states:

"We do not quarrel that the referee and the [Employment Appeals Board] could reasonably conclude from these facts that claimant's conduct constituted a wilful violation of the standards of behavior her employer had a right to expect from her. But that does not end the inquiry. The question remains whether the rule's exclusions from the definition of misconduct, specifically, isolated instances of poor judgment, should apply.

"In this case, the referee concluded that claimant's conduct was not excused as an 'isolated instance of poor judgment,' reasoning as follows:

'While the testimony indicated that the claimant had not engaged in outbursts or insubordination on previous occasions, *the loud and vulgar nature of the outburst indicates that it was not simply an isolated instance of poor judgment*, but rather was an intentional challenge to the supervisor's authority. For that reason, the referee concludes that claimant's outburst constituted misconduct under the rule cited above.' (Emphasis added.)" 304 Or at 16.

The court concluded:

"The findings demonstrate a classic example of an isolated instance of poor judgment which, without more, is not misconduct as defined by the agency's own rule, OAR 471-30-038(3)." *Id.* at 17.

The court held that an employee's wilful outburst, by itself, established only an isolated instance of poor judgment and

remanded the case to the board "to enter an order allowing unemployment benefits to claimant." *Ibid.*

The Court of Appeals consistently has so applied the rule. *See Fred Meyer, Inc. v. Employment Div.*, 103 Or App 404, 409, 797 P2d 1066 (1990) ("Although a claimant may wilfully violate the standards of behavior an employer has a right to expect, her conduct is not misconduct under ORS 657.176(2)(a) if it is an isolated instance of poor judgment. OAR 471-30-038(3)"); *Flaucher v. Employment Division*, 92 Or App 396, 399, 758 P2d 422 (1988) ("Under [the] rule, the inquiry has two stages: first, was claimant's conduct a 'wilful violation of the standards of behavior which an employer has the right to expect of an employe'; second, if so, do the rule's exclusions from the definition of misconduct, specifically, 'isolated instances of poor judgment,' apply?").

The case before the Employment Division referee was tried under that statutory and regulatory standard. Under that statute and agency rule, even wilful conduct that violates an employer's work rule does not disqualify a worker from unemployment benefits if it is an "isolated instance of poor judgment." The referee found that plaintiff "was discharged for eating the sandwich at her work station" and that, "at most, [this was] an isolated instance of poor judgment." The question, then, is whether the referee's findings under ORS 657.176(2)(a) are equivalent to a finding that plaintiff (and we use the words of the trial court's instruction) "was not discharged for willful misconduct in connection with her work."

Under ORS 657.176(2)(a) and OAR 471-30-038(3), the referee was *not* necessarily required to decide whether plaintiff had violated Emerald's rule, because it does not establish the same standard as the agency's rule.[6] Rather, the referee's task was to determine whether plaintiff was discharged for "misconduct in connection with work," ORS 657.176(2)(a), as defined in OAR 471-30-038(3). Ultimately, the one finding that was made — that plaintiff's conduct was "an isolated instance of poor judgment" — in no way proves

---

[6] Emerald's rule and the regulation are not identical. Emerald's rule was that *any* wilful violation of Emerald's rules might be "just cause for disciplinary action." OAR 471-30-038(3) contains an express exception for wilful violations that were only "isolated instances of poor judgment."

that plaintiff was *not* discharged for violating an Emerald rule. Therefore, the referee's finding would have no preclusive value in plaintiff's favor. The later preclusive use of that decision in the trial judge's instruction was therefore error.

The trial court's instruction was prejudicial, rather than harmless, because it foreclosed the jury from considering Emerald's evidence that plaintiff was discharged for wilful disregard of work rules and prevented defense counsel from arguing that theory. The Court of Appeals erred in affirming that act of the trial court. Defendants are entitled to a new trial.

■■ Defendants claim two errors in connection with the instructions on punitive damages. They first assert that the trial court's instruction incorrectly stated the standard of conduct necessary to award punitive damages and thus permitted an award of punitive damages for reckless conduct. The instruction on punitive damages read in part:

> "To award punitive damages, you must find that defendants Topaz or Theabolt's conduct in discharging plaintiff was in reckless or callous disregard of or indifference to plaintiff's constitutional rights."

This court has held that "[n]either the Oregon Legislature nor the Oregon courts can limit the rights that a plaintiff has in a federal claim, even when that federal claim is brought in state court." *Rogers v. Saylor*, 306 Or 267, 278-85, 760 P2d 232 (1988). The Supreme Court of the United States announced the federal standard for what conduct will trigger an award of punitive damages in a section 1983 action in *Smith v. Wade*, 461 US 30, 103 S Ct 1625, 75 L Ed 2d 632 (1983). *Smith* involved an inmate who was beaten and sexually harassed by other inmates. 461 US at 32. Wade asserted that Smith, the prison guard who was in charge of the dormitory where the abuse occurred, violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to supervise the dormitory properly. *Ibid.* In upholding the award of punitive damages and also approving a jury instruction almost identical to the one in this case, the Court held:

> "As for punitive damages, however, in the absence of any persuasive argument to the contrary based on the policies of § 1983, we are content to adopt the policy judgment of the

common law—*that reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." Id.* at 51 (emphasis added).

The instruction given by the trial judge was consistent with the federal standard, and the trial court committed no error in giving it.

■  Second, defendants assert that the trial court's instruction incorrectly stated the quantum of proof necessary to permit an award of punitive damages. The instruction given required that punitive damages be proved by a preponderance of the evidence. Defendant asserts that punitive damages must be proved by clear and convincing evidence.

The federal standard of proof for punitive damages in a 42 USC § 1983 action appears to be by a preponderance of the evidence.[7] *See Wren v. Spurlock*, 798 F2d 1313, 1322 (10th Cir 1986), *cert den* 479 US 1085 (1987) (approving jury instruction containing preponderance standard); *Cerjan v. Fasula*, 539 F Supp 1226, 1235 (ND Ohio 1981), *aff'd* 703 F2d 559 (6th Cir 1982) (punitive damages under section 1983 are provable by a preponderance of the evidence). The trial court properly instructed the jury that the preponderance of evidence standard was to be applied in determining whether punitive damages should be awarded.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for a new trial.

---

[7] We say "appears" because, so far as we can determine, the Supreme Court of the United States never has addressed the issue.