Argued and submitted January 13, 1993, reversed and remanded for reconsideration April 20, Employment Relations Board's petition for review and Washington County's petition for review allowed June 28, 1994 (319 Or 273)

# WASHINGTON COUNTY POLICE OFFICERS ASSOCIATION,
*Petitioner,*

*v.*

# WASHINGTON COUNTY,
*Respondent.*

(UP-42-92; CA A75956)

873 P2d 432

Will Aitchison argued the cause for petitioner. With him on the brief was Aitchison, Hoag, Vick & Tarantino.

John Junkin, Washington County Counsel, argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and Riggs, Judge, and Durham, Judge pro tempore.

DURHAM, J. pro tempore.

Deits, J., concurring in part, dissenting in part.

## DURHAM, J. pro tempore

Washington County Police Officers Association (Association) petitions for review of an order of the Employment Relations Board (ERB) that dismissed, without a hearing, its unfair labor practice complaint against Washington County (employer). Association alleged that employer violated ORS 243.672(1)(a) and (e) by unilaterally adopting a Complaint Investigations Procedures Manual (manual) that allegedly infringed on employee rights during investigatory interviews. We remand.

■ The issue is whether ERB correctly determined that the complaint raised no issue of fact or law that warranted a hearing. ORS 243.676(1)(b). ERB held that the complaint stated no issue under ORS 243.672(1)(a), which forbids interference with, restraint or coercion of public employees in or because of the exercise of their rights under ORS 243.662. Employer's manual repeated the terms of ERB's orders in an earlier case in which these parties litigated the issue of employer's rights and duties in an investigatory interview. *Washington County Police Officers Association v. Washington County*, Case No. UP-15-90, 12 PECBR 693, *on recon* 12 PECBR 727 (1991). ERB's orders in that case provided comprehensive directions to the parties about their respective rights in such interviews, including on the subject of counseling of the employee by Association's representative. No party petitioned for judicial review in that case. ERB concluded that the complaint under ORS 243.672(1)(a) did not justify a hearing, because employer's manual only restated the substance of ERB's orders in the previous case. Association does not challenge ERB's description of the effect of the manual. We agree with ERB's decision to give preclusive effect to its unappealed orders insofar as they relate to claims under ORS 243.672(1)(a). *See Hickey v. Settlemeier*, 318 Or 196, 864 P2d 372 (1993); *Nelson v. Emerald People's Utility District*, 318 Or 99, 862 P2d 1293 (1993).

■ Association argues that ERB erred in dismissing the complaint under ORS 243.672(1)(e), which requires good faith bargaining over matters of employment relations. Association contends that the adoption of the manual was a unilateral change in working conditions. ERB disagreed, on the theory that "[a]n employer has no obligation to bargain

over changes to meet minimum legal requirements," and employer's new manual merely repeated the respective rights and duties of the parties, as specified by ERB in its previous orders. ERB also reasoned that requiring bargaining over a change made to meet minimum legal requirements would

> "require an employer to continue its unlawful conduct while bargaining was completed. We will not require employers to engage in unlawful conduct. If an employer were notified, or itself determined that it had violated minimum wage requirements, an employer would have to raise wages to the minimum wage and would not be obligated to bargain." (Footnote omitted.)

That reasoning is inapplicable here, and flawed in any event. Nothing requires employer to adopt a policy regulating employee disciplinary interviews. ERB's previous orders stated the respective rights of employer, employees and Association in such interviews and required employer to conform its policy to those requirements to satisfy ORS 243.672(1)(a), but did so on the assumption that employer had chosen to adopt a policy in the first place. Employer would violate no "minimum legal requirement" by canceling its policy entirely. ERB's attempt to analogize this policy to one addressing the minimum wage fails.

■    Even if a law required enactment of a policy like employer's, ORS 243.672(1)(e) nevertheless controls any bargaining obligation that may attend the enactment. Employer's duty to bargain is not limited to enactment of rules or standards that exceed or differ from statutory requirements.[1]

*Salem Police Employees Union v. City of Salem,* 308 Or 383, 781 P2d 335 (1989), holds that a public employer

---

[1] To use ERB's example, an employer that wishes to cure its violation of the minimum wage law must comply with the minimum wage law *and* any bargaining duty imposed by ORS 243.672(1)(e). The minimum wage law does not require an employer to make unilateral policy changes in wages in order to attain compliance. In ERB's hypothetical, the employer's conundrum is the result of its potential violation of both the minimum wage law and the bargaining law, and it cannot excuse its violation of one law by pointing to a perceived "need" to violate the other. Employer's difficulties in achieving timely compliance with all applicable laws in this context may justify some adjustment of remedy by ERB, but they do not excuse employer from liability for violating its legal duties.

cannot avoid its bargaining obligation by establishing a written policy on the subject of a bargaining demand. In that case, the employer proposed a written policy relating to reserve police officers. The police union demanded bargaining, arguing that the policy subcontracted bargaining unit work. The employer refused and implemented the policy. ERB held that the policy addressed a matter of "employment relations" under ORS 243.650(7), and that its unilateral implementation violated the good faith bargaining obligation stated in ORS 243.672(1)(e). ERB rejected the employer's argument that it would observe its duty to bargain in the future if its policy had any impact on bargaining unit work. The Supreme Court agreed, holding that the union was not compelled to acquiesce in the employer's unilateral adoption of a policy that it could change at a "stroke of the Chief's pen." 308 Or at 395. The court said:

> "Workers' rights depend on provisions of their contract. They frequently have no other basis upon which to rely. That no provisions of the present contract protect bargaining unit work highlights why the employees requested the opportunity to bargain on the subject to attempt to obtain protection by contract. Even if the statutes contained temporal limitations on bargainable subjects, which they do not, the statutory policy of fostering 'peaceful adjustment of disputes' will be served by discussing a problem as soon as it is perceived. Waiting until economic or other loss occurs increases tension and risks strife. Labor contract negotiations by nature build on past and present conditions to reach the parties' concerns for the future." 308 Or at 395.

That rationale applies here. If employer's policy addresses a matter of "employment relations" under ORS 243.650(7), Association has a right to negotiate over the subject, and employer is obligated to bargain in good faith before making unilateral policy changes. The complaint alleges that the manual addresses matters of employment relations and that employer unilaterally adopted the manual despite Association's bargaining demand. Association was entitled to a hearing under ORS 243.676(1)(b) on the issue of employer's compliance with the bargaining obligation. Employer's compliance with the remedial order regarding the claim of employee coercion under ORS 243.672(1)(a), does not obviate the necessity of a hearing over the claim that

employer unlawfully refused to bargain in good faith over its policy change. ORS 243.672(1)(g).

Even if the policy complies with ERB's substantive requirements, bargaining would afford an opportunity for an exchange of ideas that may reduce potential misunderstanding about its operation, or result in a contractual interview procedure that, if violated, could lead to statutory or contractual remedies that do not attend a policy violation. ORS 243.672(1)(g). Thus, bargaining about such subjects serves statutory policies promoting "the peaceful adjustment of disputes," ORS 243.656(3), and obligating public employers and labor organizations

> "to enter into collective negotiations with willingness to resolve grievances and disputes relating to employment relations and to enter into written and signed contracts evidencing agreements resulting from such negotiations." ORS 243.656(5).

ERB made "no determination whether employee rights during interviews constitutes a mandatory subject of bargaining." Association asks us to decide on review that the policy addresses a mandatory bargaining subject. We decline to do that, because that is ERB's task in the first instance. *See AFSCME v. Clackamas County*, 69 Or App 488, 494, 687 P2d 1102 (1984).

Employer argues that its adoption of the policy complied with a provision of the collective bargaining agreement governing such changes. ERB did not address that contention, if it was presented below, and we do not address it on our review.

Because the complaint raised issues of fact and law regarding employer's alleged violation of ORS 243.672(1)(e), ERB erred in dismissing the complaint without a hearing. ORS 243.676(1)(c).

Reversed and remanded for reconsideration.

**DEITS, P. J.,** concurring in part; dissenting in part.

The sole question presented by this case is whether ERB erred in dismissing Association's unfair labor practice complaint pursuant to ORS 243.676(1)(b). That statute provides that when an unfair labor practice complaint is filed,

ERB has an obligation to investigate the complaint to determine if a hearing is warranted. If the investigation reveals that there is no issue of fact or law, ERB may dismiss the complaint. ERB concluded that there was no issue of fact or law raised by this complaint and dismissed it. Association seeks review of that decision. The majority concludes that ERB was correct in its determination that there was not an issue of fact or law regarding the alleged violation of ORS 243.672(1)(a), but that the complaint did raise issues of fact and law regarding employer's alleged violation of ORS 243.672(1)(e). I agree with the majority's disposition of the alleged violation of ORS 243.672(1)(a). However, I do not agree that the complaint raised an issue of fact or law concerning the alleged violation of ORS 243.672(1)(e). Accordingly, I dissent.

ORS 243.672(1)(e) makes it an unfair labor practice to refuse to bargain collectively in good faith. In my view, there is no allegation regarding employer's conduct here that raises a question of fact or law as to whether employer refused to bargain in good faith.

Here, ERB's prior proceedings addressed the very issue that Association wants to bargain on; namely the role of the union representative in an investigatory interview. In the earlier proceedings before ERB, the Board concluded that employer had violated ORS 243.672(1)(a) by requiring the union representative to remain silent, by threatening to eject him if he did not comply with that directive and by "publishing its Manual with instructions that relegate the Association representative to the role of a silent observer in the investigation interviews." It concluded:

"After weighing the rights of employers to investigate employee conduct and to maintain control of the workplace, the representation rights of employees, and the policy reasons for having pre-grievance union representation, this Board holds that the role of a union representative during interviews comprises the following:

"1.   The representative may inquire, at the outset of the interview, regarding its purpose, including inquiring about the general subject matter of the questioning to follow.

"2.   During the questioning of the employee by the employer, the representative may participate only to the extent of seeking clarification of questions.

"3. After the employer has completed the questioning of the employee, the representative may ask the employee questions designed to clarify previous answers or to elicit further relevant information.

"4. Before the end of the meeting, the representative may suggest to the employer other witnesses to interview and may describe relevant practices, prior situations, or mitigating factors that could have some bearing on the employer's deliberations concerning discipline." (Footnotes omitted.)

On reconsideration, ERB further clarified the role of the union representative by discussing the meaning of "counseling."

ERB's decision in the earlier proceeding clearly resolved the issue presented and ordered employer to include specific language in its manual:

"The County shall cease and desist from interfering with employees' representational rights in the Manual by relegating the employee representative to the role of an observer during any interview or meeting to which an employee's right to representation attaches. The County shall modify its Manual within 14 days of this Order consistent with this Order."

With a minor change, employer adopted such language in its manual and that is the act that Association now challenges as an unfair labor practice. ERB explained its rationale for concluding that employer's action was not a violation of ORS 243.672(1)(e). I agree with ERB's reasoning:

"We also reject the Association's contention that the County's adoption of the manual violated ORS 243.672-(1)(e), although we are not certain what theory the Association is pursuing in this case. To the extent that the Association contends the employer violated ORS 243.672(1)(e) by breaching the employees' right to representation during an investigatory interview, we reject this contention. This Board has never held that such a breach of employee representational rights would violate subsection (1)(e), and we know of no basis that would allow us to do so now. Such contentions regarding representational rights during representational hearings have been and will continue to be addressed under subsection (1)(a).

"To the extent that the Association contends that the County violated ORS 243.672(1)(e) by unilaterally changing conditions of employment when revising the manual, we reject that contention. When revising the manual, the County did nothing more than comply with the minimum legal requirements regarding employee rights to union representation in investigatory interviews, as set forth in *Washington County*. In that case, we held that a prior edition of the manual infringed on employee rights and violated subsection (1)(a) and ordered the County to modify its manual."

The majority reasons that even though in modifying the manual as it did, employer was simply complying with its legal obligation to carry out the ERB order, there is an obligation to bargain here because bargaining would afford an opportunity for an exchange of ideas that could carry out the statutory policy of promoting the peaceful adjustment of disputes. While I would agree that the opportunity to communicate and avoid disputes is a laudable objective, I think that the majority loses sight of what happened here. Unlike the situation in *Salem Police Employees Union v. City of Salem*, 308 Or 383, 781 P2d 335 (1989), employer was not seeking to unilaterally implement a policy that had potential impacts on employment relations. The rights of the parties were litigated and defined in detail in the earlier proceeding. Employer's adoption of the disputed provision in the manual was far from unilateral. Further, as employer points out, the Association does not allege that it failed to comply with its obligations under the collective bargaining agreement.

Under these circumstances, I do not think that employer had a further obligation to bargain. I agree with ERB's determination that this complaint did not raise an issue of fact or law regarding a violation of ORS 243.672(1)(e) and I would uphold its dismissal of the complaint. For all of the above reasons, I respectfully dissent.